UNITED STATES of America,
Plaintiff–Appellee,

v.

Ronnie A. BELL, Defendant–Appellant.

No. 93–2254.

United States Court of Appeals,
Eleventh Circuit.

June 3, 1994.

William M. Kent, Asst. Fed. Public Defender, Jacksonville, FL, for appellant.

Mark B. Devereaux, Asst. U.S. Atty., Jacksonville, FL, Tamra Phipps, Asst. U.S. Atty., Tampa, FL, for appellee.

Before DUBINA, Circuit Judge, CLARK and ESCHBACH *, Senior Circuit Judges.

CLARK, Senior Circuit Judge:

Defendant-appellant Ronnie A. Bell pled guilty to charges of embezzlement, making false statements, mail fraud, and conspiracy to commit these crimes. After his guilty plea but before his sentencing, Bell filed with the district court a motion to dismiss certain counts of the indictment and a motion to withdraw his guilty plea. The district court denied both motions. We agree with Bell that several counts of the indictment, including some counts to which he pled guilty, fail to state an offense as alleged. Accordingly, we vacate Bell's convictions and remand the case for further proceedings.

## BACKGROUND FACTS

Bell and his co-defendant, James E. Cushion,[1] were the administrator and assistant administrator, respectively, of two funds established for the benefit of members of the International Longshoremen's Association

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. Cushion has not appealed his conviction; this appeal involves Bell only.

(the "ILA"). The first fund, known as the Welfare and Pension Fund (the "Pension Fund"), was established to provide retirement income and health benefits to eligible members of the ILA in Jacksonville, Florida. The Pension Fund is an employee welfare benefit plan and an employee pension benefit plan within the meaning of and subject to the provisions of title I of the Employee Retirement Income Security Act of 1974 ("ERISA").[2] The second fund, known as the Container Royalty Fund (the "Royalty Fund"), was established to provide supplemental income to eligible members of the ILA in Jacksonville. This fund consists of the accumulated royalty payments made by the Jacksonville Maritime Association for each container that passes through the Jacksonville port. These royalty payments are distributed at the end of each taxable year to eligible members of the ILA. The Royalty Fund is a legally separate entity from the Pension Fund and is not subject to the provisions of ERISA.

The charges against Bell and Cushion arose out of their alleged unauthorized issuance of checks, made out to themselves and others, written on accounts of the Pension Fund and the Royalty Fund. The superseding indictment against Bell and Cushion contains 36 counts. Count 1 charges Bell and Cushion with conspiracy to embezzle funds from the Pension Fund and from the Royalty Fund, to make false statements in connection with documents required to be filed under title I of ERISA, and to commit mail fraud, all in violation of 18 U.S.C. § 371. Counts 2–22 charge Bell and Cushion with embezzlement from the Pension Fund, and counts 23–30 charge them with embezzlement from the Royalty Fund, all in violation of 18 U.S.C. § 664. Counts 31–33 charge Bell and Cushion with making false statements in relation to documents required to be filed under ERISA, in violation of 18 U.S.C. § 1027. Finally, counts 34–36 charge Bell and Cushion with mail fraud, in violation of 18 U.S.C. § 1341.

Pursuant to a written plea agreement with the government, Bell pled guilty to counts 1 (conspiracy), counts 19 and 20 (embezzlement from the Pension Fund), counts 29 and 30 (embezzlement from the Royalty Fund), count 32 (making false statements in relation to documents required to be filed under ERISA), and count 36 (mail fraud). Prior to his sentencing, however, Bell filed a motion to withdraw his guilty plea. He also filed a motion to dismiss certain counts of the indictment, arguing that several counts of the indictment failed to charge an offense; specifically, he argued that his alleged embezzlement from the Royalty Fund did not constitute a violation of 18 U.S.C. § 664 because the Royalty Fund was not subject to the provisions of ERISA. The district court denied both motions and, subsequently, sentenced Bell to 30 months in prison. Bell filed this appeal.

## DISCUSSION

Bell contends that the district court erred in declining to dismiss those counts of the indictment charging him with embezzlement from the Royalty Fund and in declining to permit him to withdraw his guilty plea. He seeks vacation of his convictions and an opportunity to have his case tried before a jury.

If a motion for withdrawal of a guilty plea is made before sentence is imposed, the district court is authorized to permit the withdrawal "upon a showing by the defendant of any fair and just reason."[3] Although a guilty plea waives many objections to the conviction, it does *not* waive the objection that the indictment fails to charge an offense.[4] In this case, Bell filed both his motion to dismiss certain counts of the indictment and his motion to withdraw his guilty plea before imposition of his sentence. Because the district court denied the motion to dismiss, thereby rejecting Bell's argument that certain counts of the indictment failed to state an offense, it never reached the question of whether the defective indictment constituted a "fair and just reason" for with-

---

2. 29 U.S.C. §§ 1001–1145.

3. Fed.R.Crim.P. 32(d).

4. *United States v. Meacham,* 626 F.2d 503, 509–10 (5th Cir.1980).

drawal of the guilty plea. We find that Bell's argument that several counts of the indictment fail to charge an offense, if meritorious, constitutes a "fair and just reason" for withdrawal of his guilty plea. We must determine, then, whether the district court erred in rejecting this argument.

■ Bell was charged with embezzling from the Royalty Fund in violation of 18 U.S.C. § 664, which provides as follows:

> Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit plan or employee pension benefit plan, or of any fund connected therewith, shall be fined not more than $10,000, or imprisoned not more than five years, or both.

> As used in this section, the term "any employee welfare benefit plan or employee pension benefit plan" means any employee benefit plan subject to any provision of title I of the Employee Retirement Income Security Act of 1974.

It is undisputed that the Royalty Fund is *not* an employee benefit plan subject to the provisions of ERISA. The government relies on the "fund connected therewith" language. The government points out that the Royalty Fund and the Pension Fund were both established for the benefit of ILA members in Jacksonville and that the two funds shared a common administrator; thus, the government argues, the two funds are sufficiently "connected" to bring the Royalty Fund within the purview of § 664.

The parties have not cited and we have not located any case law construing the "fund connected therewith" language of § 664.[5] The broad reading urged upon us by the government would render two funds "connected" merely because they share common beneficiaries and administrators. We have reviewed the legislative history of § 664, and we find nothing in that history to indicate that Congress intended such a broad reading of the "fund connected therewith" language.[6] To the contrary, the legislative history refers to § 664 as "a provision making it a crime to embezzle, steal, or unlawfully and willfully abstract or convert to his own use or to the use of another any of the assets of an employee welfare or pension benefit plan."[7] There is no reference in the legislative history to the "fund connected therewith" language and no indication that § 664 was intended to apply to any funds other than those governed by ERISA. The Container Royalty Fund is not governed by ERISA and is not subject to the provisions of § 664.

We reject the government's broad reading of the "fund connected therewith" language, and we hold that two funds are not "connected" for purposes of § 664 merely because they share common beneficiaries and administrators. We need not and do not decide what sort of relationship would render two funds "connected" within the meaning of the statute. We only hold that common beneficiaries and administrators, without more, is insufficient.

Thus, to the extent the indictment in this case charges Bell with embezzlement from the Royalty Fund in violation of § 664, it fails to state an offense.[8] Although defense counsel was late in discovering his client had

---

**5.** Bell relies on *United States v. Furst*, 886 F.2d 558, 565 (3d Cir.1989), *cert. denied*, 493 U.S. 1062, 110 S.Ct. 878, 107 L.Ed.2d 961 (1990), in which the court said: "It is indisputable that one substantive element of 18 U.S.C. § 664 is that the account from which funds are embezzled must be one of the two types of accounts defined in the statute; if the account is not governed by ERISA, section 664 is inapposite." *Furst* involved the transfer of assets between ERISA and non-ERISA accounts; there was no allegation that the non-ERISA accounts were "connected" with the ERISA accounts. Thus, we do not find the language in *Furst* helpful in construing the "fund connected therewith" language of § 664.

**6.** Section 664 was enacted as a part of the Welfare and Pension Plans Disclosure Act Amendments of 1962. The legislative history of this Act is found at 1962 U.S.C.C.A.N. 1532, *et seq.*

**7.** H.R.Rep. No. 998, 87th Cong., 2nd Sess., *reprinted in*, 1962 U.S.C.C.A.N. 1532, 1547; *see also id.* at 1538 (§ 664 makes criminal "embezzlement of a plan's funds or other assets").

**8.** *See* text at note 4.

been wrongfully convicted in part, the government was derelict in failing to inform the district court that there was no case law which supported the charges in the indictment involving the Container Royalty Fund. The district court erred, then, in declining to dismiss counts 23–30 of the indictment. Our ruling also affects part of count 1, the conspiracy charge, which alleges, among other things, that Bell conspired to violate § 664 by embezzling from the Royalty Fund. Because the district court failed to recognize that the indictment was defective in part, it denied Bell's request to withdraw his guilty plea. This, too, was error. The defects in the indictment in this case constitute a "fair and just reason" for withdrawal of Bell's guilty plea.

## CONCLUSION

For the reasons explained above, we VACATE Bell's pleas and convictions and REMAND the case for further proceedings consistent with this opinion.