**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 28, 2014**

# In the Court of Appeals of Georgia

A14A1252. WALKER v. THE STATE.                    DO-046 C

DOYLE, Presiding Judge.

Following a jury trial, Furman Walker appeals from his conviction of armed robbery[1] and possession of a firearm during the commission of a felony.[2] He contends that the trial court erred because (1) the evidence was insufficient to support the guilty verdict, (2) the indictment failed to allege an essential element of the crime and was therefore void, and (3) he received ineffective assistance of counsel. For the reasons that follow, we affirm.

1. On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys

---

[1] OCGA § 16-8-41 (a).

[2] OCGA § 16-11-106 (b) (1).

the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*,[3] and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.[4]

So viewed, the evidence shows that during an overnight shift at a Sonic fast-food restaurant, a man in a ski mask appeared at the door and entered the restaurant, demanding money and threatening to shoot someone. At the robber's insistence, an employee opened a cash register and put money into a plastic Sonic salad bag. The robber then ordered an employee to open the safe, but the employee explained that he did not know how, so the robber fled in a dark colored sedan with a vinyl top that was parked next door to the restaurant.

Employees called 911 and described the robbery and vehicle to the police operator. A police officer who was responding to another call happened to be a block away from the Sonic. The officer immediately spotted a dark sedan driving at an

---

[3] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[4] (Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

excessive rate of speed with no lights, and the officer requested a description of the robber's vehicle. The vehicle matched the description given to him by dispatch, so the officer pursued it at a high rate of speed for some time. Ultimately, the officer lost sight of the vehicle, but soon spotted it again parked at a nearby residence. As the officer got out of his vehicle to approach the residence, Walker appeared at the door of the residence, sweating and breathing heavily. As the officer walked past the sedan, he saw in the front floorboard a black ski mask. The officer explained that he was investigating an armed robbery, and Walker denied any knowledge of the robbery. In light of the ski mask, the matching vehicle, and Walker's sudden appearance at the door, the officer, along with other arriving backup, briefly detained Walker for further investigation. A Sonic salad bag was also found in Walker's vehicle.

Shortly thereafter, witnesses from the Sonic were asked to identify Walker, and although one later said that he was 90 percent sure Walker was the robber, none of the witnesses could positively identify him at that time because the robber was wearing a mask.[5]

---

[5] One witness did recognize Walker's gray goatee and distinctive rings as matching those of the robber.

Police later asked Walker to make a recording of his voice, and based on this recording, two Sonic witnesses were able to positively identify Walker's voice as that of the robber. The witnesses recognized the voice as "just like" and "exactly" like the robber's. Both witnesses described a peculiarity about the robber's speech – that he spoke with a thick-tongued lisp – which was also present in the recording. Based on the police investigation, Walker was charged with armed robbery and possession of a firearm during a felony, and following his conviction by a jury, he appeals.

1. Walker now contends that the evidence was insufficient to support the verdict, citing inconsistencies and the largely circumstantial nature of the State's case. But conflicts in the evidence are for the jury to resolve,[6] and this Court is not authorized to second-guess the jury's credibility determinations.[7]

Walker nevertheless urges that "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypotheses save that of the guilt of the

---

[6] See id.

[7] See *Hazelwood v. State*, 265 Ga. App. 709, 711 (595 SE2d 564) (2004).

4

accused."[8] But this rule applies where the conviction is based solely on circumstantial evidence,[9] and here, there was direct evidence based on the witness's recognition of Walker's voice that Walker was the robber.

It is well settled that

[w]hether the evidence excludes every other reasonable hypotheses is ordinarily a question for the jury, whose finding shall not be disturbed unless the verdict of guilt is unsupportable as a matter of law. Further, circumstantial evidence must exclude only reasonable inferences and hypotheses and it is not necessary that such evidence be devoid of every inference or hypothesis except that of the defendant's guilt. The question of whether there was a reasonable hypothesis favorable to the accused is a question for the jury. If a jury is authorized to find that the evidence, circumstantial though it may be, is sufficient to exclude every reasonable hypothesis save that of guilt, the verdict of the jury will not be disturbed by the appellate court unless the verdict is insupportable as a matter of law.[10]

---

[8] Former OCGA § 24-4-6. This evidentiary rule is now found at OCGA § 24-14-6.

[9] See *Zapien-Chavez v. State*, 285 Ga. App. 319, 320 (1) (646 SE2d 311) (2007), citing *Lane v. State*, 255 Ga. App. 274, 276 (564 SE2d 857) (2002).

[10] (Citations and punctuation omitted.) *Reeves v. State*, 294 Ga. 673, 674 (1) (755 SE2d 695) (2014).

Based on the witnesses' positive identification of Walker's distinctive speech; the ski mask and salad bag found in Walker's vehicle; and the sudden, labored, and sweaty appearance of Walker immediately after the robbery and high speed chase, the jury was authorized to find Walker guilty of the offenses.

2. Walker also contends that the trial court erred by convicting him on a void indictment because, he argues, it lacked an essential element of the offense of armed robbery. The indictment alleged as follows:

> The Grand Jurors . . . charge and accuse Furman Walker with the offense of Armed Robbery for that the said accused in Lowndes County, Georgia, on or about the 25th day of September 2010, then and there with intent to commit a theft, did unlawfully take lawful U.S. Currency, from the immediate presence of [the victim], by the use of an offensive weapon, to-wit: a pistol, contrary to the laws of said State, the good order, peace and dignity thereof.

OCGA § 16-8-41 (a) defines the offense as follows: "A person commits the offense of armed robbery when, with intent to commit theft, he or she takes *property of another* from the person or the immediate presence of another by use of an

offensive weapon, or any replica, article, or device having the appearance of such weapon."[11]

Walker correctly points out that the fact that the currency was the property of another was not alleged in the indictment under which he was convicted. But he did not raise this issue in the trial court by a timely general demurrer, or after trial by a timely motion in arrest of judgment.[12] "The failure to file a general or special demurrer, or a timely motion in arrest of judgment, waives any claim that could have been raised in a general or special demurrer."[13] Accordingly, this enumeration presents nothing for review.

3. Walker next contends that he received ineffective assistance of counsel on several grounds: (a) failure to challenge the defective indictment, (b) failure to

---

[11] (Emphasis supplied.)

[12] See *State v. Wilson*, 318 Ga. App. 88, 91 n. 10 (1) (732 SE2d 330) (2012) ("Because a person cannot be lawfully convicted on an invalid indictment, a general demurrer may be raised orally or in writing at any time before judgment is entered on his or her conviction."); *Coleman v. State*, 318 Ga. App. 478, 479 (1) (735 SE2d 788) (2012) ("Because a general demurrer attacks the legality of an indictment, it may be raised any time during the trial and may even be raised after the verdict by a motion in arrest of judgment; however, a motion in arrest of judgment must be made during the term when the judgment was obtained.").

[13] *Coleman*, 318 Ga. App. at 479 (1).

adequately prepare for trial, (c) failure to object to hearsay and bolstering testimony, (d) failure to object to opinion testimony on the ultimate issue, and (e) failure to obtain transcripts of the 911 call and radio calls or an expert in the field of voice identification.

Under *Strickland v. Washington*,[14] to succeed on an ineffective assistance claim, a criminal defendant must demonstrate both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance.[15] "There is a strong presumption that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case."[16] If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court need not examine the other prong.[17] In reviewing the trial court's decision, "[w]e

---

[14] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[15] See id. at 687-688, 694 (III) (A)-(B).

[16] (Citation and punctuation omitted.) *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004).

[17] See *Strickland*, supra, 466 U. S. at 697 (IV); *Fuller v. State*, 277 Ga. 505, 507 (3) (591 SE2d 782) (2004).

accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[18]

(a) *Failure to challenge the indictment*. As noted in Division 2, the indictment did not allege that the currency Walker stole was the property of another, and Walker's trial counsel failed to challenge this omission. But even if we assume that the indictment was fatally flawed and therefore susceptible to a general demurrer,[19] "the grant of a general demurrer due to a finding that the indictment was void ab initio . . . does not automatically bar the reindictment of the defendant."[20]

> Moreover, *when trial has been had before the appellate court reviews the merits of the motion to quash*, where no prejudice to defendant has occurred though the indictment . . . is not perfect, reversal is a mere windfall to defendant and contributes nothing to the administration of justice. Convictions are no longer reversed because of minor and technical deficiencies which do not prejudice the accused. *Upon a*

---

[18] (Punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

[19] See, e.g., *Cooks v. State*, 325 Ga. App. 426, 428 (1) (750 SE2d 765) (2013) (indictment was void because the defendant "could admit all the allegations of the indictment and still not be guilty of the robbery charged since there would be no admission that he took the property of another") (physical precedent only).

[20] *State v. Wilson*, 318 Ga. App. 88, 97 (3) (732 SE2d 330) (2012), citing *Armstrong v. State*, 281 Ga. App. 297, 298 (635 SE2d 880) (2006).

9

*proceeding after verdict*, no prejudice being shown, it is enough that necessary facts appear in any form, or by fair construction can be found within the terms of the indictment . . . Thus a defendant who was not misled to his prejudice by any imperfection in the indictment . . . cannot obtain reversal of his conviction on that ground.[21]

Here, the indictment set out the date of the offense and the facts necessary to inform Walker of the charged offense, allow him to prepare his defense, and protect him from double jeopardy for the charged offense. The trial evidence showed no dispute as to the robber's lack of authority to take the money from the Sonic restaurant at gunpoint, so Walker was not misled by the wording of the indictment about the nature of the property he stole. Based on the record before us, this argument presents no ground for reversal.

(b) Walker argues that his trial counsel did not adequately prepare for trial because he failed to subpoena and secure testimony from two witnesses (Vincent Flanders and Micah Edwards) who gave initial statements to police describing the robber as having light skin and the getaway vehicle as a tan pickup truck (instead of a dark sedan).

---

[21] (Punctuation omitted; emphasis supplied.) *Coleman v. State*, 318 Ga. App. 478, 482 (2) (735 SE2d 788) (2012).

10

With respect to Edwards, Walker's trial counsel testified that he attempted to reach him several times, but was never successful. Trial counsel also pointed out that despite a subpoena issued by the State, Edwards was never successfully contacted by either him or the State, nor did he testify at the hearing on trial counsel's effectiveness. Even assuming that trial counsel performed deficiently, absent further evidence that Edwards was available to testify and what his testimony would have been, Walker cannot make the required showing of harm resulting from his trial counsel's efforts to obtain testimony from Edwards.[22]

With respect to Flanders, he was located and did testify at the hearing on Walker's ineffective assistance claim. His testimony was equivocal about the type of vehicle used by the robber, and Flanders concluded that he was "not sure what type of vehicle it was." Such testimony does not give rise to a reasonable probability that the trial result would have been different if this testimony had been elicited at trial.

---

[22] See *Robinson v. State*, 278 Ga. 31, 35 (3) (b) (597 SE2d 386) (2004) ("In assessing the prejudicial effect of counsel's failure to call a witness (whether that failure resulted from a tactical decision, negligent oversight, or otherwise), a petitioner is required to make an affirmative showing that specifically demonstrates how counsel's failure would have affected the outcome of his case.") (punctuation omitted).

(c) *Failure to object on hearsay and bolstering grounds*. Walker points to his trial counsel's failure to object to certain testimony given by Detective Stephen Thompson about what he saw on a Sonic security video that was played for the jury. Thompson spoke to what he saw on the videotape to explain how he narrowed his investigation to Walker. Despite the cumulative nature of the testimony, Walker asserts that his trial counsel should have objected on hearsay and bolstering grounds. While the testimony may have served the State's case, Walker does not demonstrate how the testimony amounted to improper bolstering by commenting on the veracity of another witness's testimony.[23] Therefore, trial counsel's failure to object did not amount to ineffective assistance.[24]

(d) *Failure to object to comment on ultimate issue*. During trial, the following colloquy took place during testimony by a detective:

> Walker's counsel: Did you at any time tell Mr. Walker, 'You may not have done this, Mr. Walker, but you know who did?

---

[23] See, e.g., *Bly v. State*, 283 Ga. 453, 459 (3) (660 SE2d 713) (2008) ("a witness . . . can never bolster the credibility of another witness as to whether the witness is telling the truth").

[24] See *Williams v. State*, 292 Ga. 844, 848 (3) (a) (742 SE2d 445) (2013) (failure to object to cumulative hearsay is not grounds for reversal).

12

Detective: That's a possible statement I might have said.

Counsel: So, you said to him, "you may not have done it, but we think you know who did do it."?

Detective: That's a possible statement I would have made to him.

Counsel: Nothing further.

State: [on redirect] . . . [D]o the statements that [trial counsel] asked you about, . . . is that a typical thing you do to get people to talk?

Detective: That would be a tactic used during the course of an interview to get somebody to speak to me, yes.

State: Do you think anybody else did it based on what you have?

Detective: Absolutely not.

At the motion for new trial hearing, Walker's trial counsel testified that he did not specifically recall the testimony, but he would not have objected because "he did not want to draw the jurors' attention to it anymore than that[, but] I probably should have objected." To the extent that this was a tactical decision not to object, it does not require reversal because "decision of whether to interpose certain objections is a

matter of trial strategy and tactics."[25] And "when one is considering matters of trial strategy and tactics, the effectiveness of trial counsel must not be judged by hindsight or the ultimate result of the trial."[26]

To the extent that trial counsel's poor memory or equivocation takes this out of the realm of trial strategy, we note that the comment was an isolated statement on re-direct to explain the interview tactic challenged by Walker's trial counsel during cross-examination. The Sonic witnesses consistently identified Walker as the robber, and in light of the other evidence of Walker's guilt, we conclude that the comment was not such that it gave rise to a reasonable probability that the trial outcome would have been different had an objection been interposed.[27]

---

[25] (Punctuation omitted.) *Gray v. State*, 291 Ga. App. 573, 579 (2) (662 SE2d 339) (2008), citing *Boyt v. State*, 286 Ga. App. 460, 463 (2) (b) (649 SE2d 589) (2007) (failure to object to investigator's opinion testimony allegedly concerning ultimate issues of fact deemed reasonable trial strategy). See also *Glass v. State*, 255 Ga. App. 390, 403 (10) (g) (565 SE2d 500) (2002) (reasonable trial strategy to avoid drawing attention to comment on ultimate issue).

[26] *Williams v. State*, 280 Ga. 539, 543 (2) (630 SE2d 410) (2006).

[27] See *Birkbeck v. State*, 292 Ga. App. 424, 429 (2) (b) (665 SE2d 354) (2008) (failure to object to a single comment on the ultimate issue did not result in sufficient prejudice for reversal in light of isolated nature of comment, jury's ability to evaluate the witnesses, and the other evidence of guilt), disapproved of on other grounds by *State v. Gardner*, 286 Ga. 633, 634 (690 SE2d 164) (2010); *Usher v. State*, 258 Ga. App. 459, 463 (1) (f) (574 SE2d 580) (2002) (no reasonable probability of different

(e) *Failure to obtain transcripts or a voice identification expert*. Finally, Walker asserts that his trial counsel should have obtained transcripts from the 911 call and radio dispatches, as well as a voice identification expert. But Walker did not call such an expert to proffer how such an expert may have helped, nor did he explain how the 911 transcripts would have exculpated him. Absent a proffer of evidence or testimony from any uncalled witness or a legally recognized substitute, appellant cannot meet his burden under *Strickland* to meet the prejudice element of his ineffective assistance claim.[28]

*Judgment affirmed. Miller and Dillard, JJ., concur*.

---

trial outcome because witness consistently identified defendant as perpetrator).

[28] See *Barge v. State*, 294 Ga. 567, 569 (2) (755 SE2d 166) (2014).

15